Citation Nr: 1138413 
Decision Date: 10/14/11 Archive Date: 10/19/11

DOCKET NO. 10-13 207 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Manila, the Republic of the Philippines


THE ISSUE

Entitlement to an initial disability rating in excess of 50 percent for posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

William Alan Nelson II, Associate Counsel

INTRODUCTION

The Veteran, who is the appellant, served on active duty from February 1946 to January 1949. 

This matter comes before the Board of Veterans' Appeals (Board) from a 
September 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Manila, Republic of the Philippines, which granted service connection for PTSD, effective from January 21, 2005, and assigned an initial 30 percent rating. In January 2008, the Veteran entered a notice of disagreement with the initial rating assigned. In a March 2011 rating decision during the appeal, the RO assigned a 50 percent rating for the entire initial rating period from January 21, 2005.

The Veteran has not alleged unemployability due to his service-connected PTSD, and the matter of entitlement to a total rating based on individual unemployability due to service-connected disabilities is not raised by either the Veteran or the evidence of record. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) ( 2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. For the entire period of initial rating appeal, the Veteran's PTSD has been characterized by nightmares, recurrent and intrusive distressing thoughts, social avoidance, hyperarousal, hypervigilance, depressed mood, impaired memory, difficulty sleeping, restricted affect, and poor judgment.

2. For the entire period of initial rating appeal, the Veteran's PTSD has not been characterized by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; inability to establish and maintain effective relationships.


CONCLUSION OF LAW

For the entire initial rating period, the criteria for an initial disability rating in excess of 50 percent for PTSD have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2011) redefined VA's duty to assist a Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2011).

In a February 2005 letter, the RO provided notice to the Veteran regarding what information and evidence is needed to substantiate a claim for service connection, as well as what information and evidence must be submitted by the Veteran and what evidence VA would obtain. The notice included provisions for disability ratings and for the effective date of the claim.

The claim for an initial higher rating for PTSD arises from disagreement with the initial evaluation following the grant of service connection. The courts have held that once service connection is granted the claim is substantiated, additional VCAA notice is not required; and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 
§ 3.159(c),(d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4) (2011).

VA has obtained records of treatment reported by the Veteran, including service treatment records and VA treatment records. Additionally, the Veteran was provided a VA examination in October 2009 for PTSD. For the reasons set forth above, the Board finds that VA has complied with the VCAA's notification and assistance requirements. 

Disability Rating Criteria

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10 (2011).

In evaluating a disability, the Board considers the current examination reports in light of the whole recorded history to ensure that the current rating accurately reflects the severity of the condition. The Board has a duty to acknowledge and consider all regulations that are potentially applicable. Schafrath v. Derwinski, 
1 Vet. App. 589 (1991). The medical as well as industrial history is to be considered, and a full description of the effects of the disability upon ordinary activity is also required. 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21 (2011). At the time of an initial rating, separate ratings can be assigned for separate periods of time based on facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The schedular criteria, effective as of November 7, 1996, incorporate the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). 38 C.F.R. §§ 4.125, 4.130. A 50 percent rating is warranted if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to compete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating, may be assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. The criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001).

A 100 percent schedular evaluation contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. 4.130, Diagnostic Code 9411.

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th ed. (DSM-IV) at 32).

A GAF score of 41-50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id.

A GAF score of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." Id.

A GAF score of 61-70 indicates "Mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id. 

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the evaluation, but are not meant to be exhaustive. The Board need not find all or even some of the symptoms to award a specific evaluation. Mauerhan v. Principi, 16 Vet. App. 436, 442-3 (2002). On the other hand, if the evidence shows that a veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned. Mauerhan, 16 Vet. App. at 443. The U.S. Court of Appeals for the Federal Circuit has embraced the Mauerhan Court's interpretation of the criteria for rating psychiatric disabilities. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

Initial Rating for PTSD

The Veteran was granted service connection and initially assigned a 30 percent rating for PTSD, effective January 21, 2005, in the September 2007 rating decision on appeal. In a March 2011 rating decision during the initial rating appeal, the RO granted a 50 percent rating for the entire initial rating period from January 21, 2005.

After a review of all the evidence, lay and medical, the Board finds that, for the entire period of initial rating appeal, the Veteran's PTSD has been characterized by nightmares, recurrent and intrusive distressing thoughts, social avoidance, hyperarousal, hypervigilance, depressed mood, impaired memory, difficulty sleeping, restricted affect, and poor judgment, consistent with the criteria for a 
50 percent disability rating under Diagnostic Code 9411. 38 C.F.R. § 4.130. 

The evidence includes VA treatment reports from February 2005 to 
September 2006, where VA examiners reported the Veteran exhibited poor judgment, short-term memory impairment, restricted affect, avoidant behavior, intrusive memories, and depressed mood. VA examiners also reported no delusions or hallucinations and no history of suicidal or homicidal ideation. The Axis I diagnoses were chronic PTSD and a chronic major depressive disorder. The GAF scores varied between 45 and 55.

In a June 2007 VA treatment record, the VA examiner reported intrusive thoughts, nightmares, flashbacks, and sleep and concentration problems. The Veteran reported feelings of helplessness and hopelessness. In VA treatment records from October 2006 to August 2009, VA examiners reported the Veteran had a linear thought process, insight and judgment were fair, and behavior and affect were appropriate. VA examiners also reported no history of suicidal or homicidal ideation and no history of delusions or hallucinations. The Axis I diagnoses were chronic PTSD and a chronic major depressive disorder. The GAF scores were relatively consistent at 55.

At a PTSD examination conducted by a VA staff psychiatrist in October 2009, the examiner recorded the Veteran's history in detail. The Veteran reported recurrent intrusive memories, avoidance symptoms, depressed mood, and nightmares. The Veteran also reported sleep problems and feeling detachment and estrangement from others. The Veteran's wife reported impaired judgment, such as walking into traffic without looking and outbursts in public. 

During the examination interview in October 2009, the Veteran was fully oriented to person and place, but had trouble remembering what day it was. The VA examiner reported that the Veteran was cooperative, mood was restless, speech was spontaneous, and judgment and insight were good. The VA examiner also reported hypervigilance, hyperarousal symptoms, no panic attacks, and some irritability, but no outbursts of violence. He evidenced no delusions or hallucinations. His thoughts were linear and logical throughout the examination. He denied current thoughts of harm to himself or others. He was also found capable to manage his own financial affairs. The Axis I diagnosis was PTSD, depression, and cognitive disorder. The GAF score was 45.

In VA treatment records from February 2010 to March 2011, VA examiners reported the Veteran was alert and oriented in all spheres. VA examiners also reported depressed mood, linear thought process, insight and judgment were fair, and behavior and affect were appropriate. VA examiners also reported no history of suicidal or homicidal ideation and no history of delusions or hallucinations. The Axis I diagnoses were chronic PTSD and a chronic major depressive disorder. The GAF scores were relatively consistent at 55. 

In the May 2010 Decision Review Officer (DRO) hearing at the Manila RO, the Veteran's spouse testified that the Veteran was verbally abusive to her, and that he was very irritable. Layno v. Brown, 6 Vet. App. 465, 469 (1994) (lay persons are competent to speak to symptomology when the symptoms are readily observable). 

On review of the evidence above, the Board finds that, for the entire initial rating period, the symptoms of the Veteran's PTSD have more closely approximated nightmares, recurrent and intrusive distressing thoughts, social avoidance, hyperarousal, hypervigilance, depressed mood, impaired memory, difficulty sleeping, restricted affect, and poor judgment. The GAF scores have varied between 45 and 55. The Veteran's psychiatric symptoms have been relatively consistent, and a 50 percent rating takes into account significant social and occupational impairment. 

The Board also finds that, for the entire initial rating period on appeal, the Veteran's PTSD has not been characterized by occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, as required for a 70 percent disability rating under Diagnostic Code 9411. 38 C.F.R. § 4.130. 

The evidence in this case does not reveal suicidal ideation. In VA treatment records from February 2005 to March 2011, the Veteran denied any suicidal ideation. In the October 2009 VA PTSD examination, the Veteran denied any suicidal ideation. 

With regard to obsessional rituals, the October 2009 VA examiner did report some hypervigilance, but did not describe the severity of the symptoms. The Veteran does not contend, nor does the record reflect, that any symptoms of hypervigilance interfere with routine activities.

The Veteran's speech has not been intermittently illogical, obscure, or irrelevant. In VA treatment records from February 2005 to March 2011, VA examiners reported linear thought process and spontaneous speech. In the October 2009 VA PTSD examination, the VA examiner reported spontaneous speech.

The record does not reflect that the Veteran suffers from near-continuous panic or depression affecting the ability to function independently. In the October 2009 VA PTSD examination, the Veteran denied having any panic attacks. The VA examiner reported depression; however, it was not quantified, and no further description was given. 

The record also does not reflect the Veteran has suffered from spatial disorientation, and his appearance and hygiene are normal. In the October 2009 VA PTSD examination, the Veteran was dressed and well groomed. The October 2009 VA examiner reported the Veteran was fully oriented in person and place; the Veteran could also remember the date, but had trouble remembering which day of the week it was. VA treatment records from February 2005 to March 2011 reported the Veteran was dressed and groomed appropriately and was oriented in all spheres. 

The Veteran does have some irritability. In the October 2009 VA PTSD examination, the Veteran's spouse reported that the Veteran had irritability with occasional yelling; however, the VA examiner reported no outbursts of violence. In the May 2010 DRO hearing, the Veteran's spouse testified that the Veteran is verbally abusive to her, and that he is very irritable. The Board notes that the reported incidents are without time reference, so it is indiscernible if these reported incidents occurred during the rating period on appeal. In addition, this report of verbal abuse does not demonstrate unprovoked irritability with "periods of violence" as contemplated by a 70 percent rating. 

The record demonstrates that the Veteran's PTSD is characterized by nightmares, recurrent and intrusive distressing thoughts, social avoidance, hyperarousal, depressed mood, impaired memory, difficulty sleeping, restricted affect, and poor judgment. The Board concludes that such symptomatology and social and occupational impairment more nearly approximates the criteria for a 50 percent disability rating for the entire period of claim, and does not more nearly approximate the criteria for the next-higher 70 percent rating under Diagnostic Code 9411 for any period. Even though the Veteran exhibits some irritability, the Veteran's PTSD symptoms, as a whole, are contemplated by the 50 percent rating. See 38 C.F.R. § 4.7 (the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating, otherwise, the lower rating will be assigned). 

The Board has also weighed and considered the GAF scores during the initial rating period. While the GAF scores have varied between 45 and 55, most of the GAF scores are 55. The GAF score of 55 reflects moderate symptoms or moderate difficulty in social and occupational functioning, which is consistent with the 50 percent disability rating criteria of occupational and social impairment with reduced reliability and productivity, including difficulty in establishing and maintaining effective work and social relationships. 

While a GAF score of 45 was assigned in October 2009, which indicates serious symptoms or serious impairment in social or occupational functioning, the evidence reflects that during this time the Veteran's psychiatric symptoms have been relatively consistent, and that the Veteran's symptomatology did not meet or more nearly approximate occupational and social impairment with deficiencies in most areas (work, school, family relations, judgment, thinking, or mood), and did not include inability to establish and maintain effective relationships. For example, the symptomatology noted at the time of the October 2009 VA PTSD examination were primarily sleep problems, depression, anxiety, and irritability. The GAF score and interpretations of the score are important considerations in rating a psychiatric disability. See, e.g., Richard, 9 Vet. App. at 267; Carpenter v. Brown, 8 Vet. App. 240, 243 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the evaluation issue. The GAF score must be considered in light of the actual symptoms of a veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. 
§ 4.126(a) (2011).

For these reasons, the Board finds that a preponderance of the evidence is against the appeal for an initial rating in excess of 50 percent for PTSD for any period, and the appeal must be denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. 
§ 5107; 38 C.F.R. § 4.3, 4.7. 

Extraschedular Consideration

The Board has considered whether referral for an extraschedular evaluation is warranted for PTSD. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2011). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 
38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

Turning to the first step of the extraschedular analysis, the Board finds that the symptomatology and impairment caused by the Veteran's PTSD is specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The schedular rating criteria, Diagnostic Code 9411, specifically provides for disability ratings based on a combination of history and clinical findings. In this case, considering the lay and medical evidence, the Veteran's PTSD has manifested nightmares, recurrent and intrusive distressing thoughts, social avoidance, hyperarousal, depressed mood, impaired memory, difficulty sleeping, restricted affect, and poor judgment. These symptoms are part of the schedular rating criteria. 

The schedular rating criteria specifically include occupational and social impairment, as indicated by reduced reliability and productivity, and as caused by specific psychiatric symptoms. The schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria. Mauerhan, 
16 Vet. App at 442; see also 38 C.F.R. § 4.21 (2011). Additionally, the Board has considered GAF scores, which are incorporated through the DSM-IV as part of the schedular rating criteria, as reflective of the degree of severity of PTSD symptoms or overall functional impairment caused by the PTSD. For these reasons, the Board finds that the schedular rating criteria is adequate to rate the Veteran's PTSD, and referral for consideration of an extraschedular evaluation is not warranted.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the problems reported by the 

Veteran are specifically contemplated by the criteria discussed above, including the 
effect on his occupation and daily life. In the absence of exceptional factors associated with PTSD, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).


ORDER

An initial disability rating in excess of 50 percent for PTSD is denied.



____________________________________________
J. Parker
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs